BRANDON D. SAXON  (SBN:  252712)
bsaxon@grsm.com
ALEXANDER T. MARX (SBN: 295624)
amarx@grsm.com
GORDON & REES SCULLY MANSUKHANI, LLP
101 W. Broadway Suite 2000
San Diego, CA 92101
Telephone:  (619) 544-7229
Facsimile:  (619) 696-7124

Attorney for DEFENDANT
BARNARD CONSTRUCTION COMPANY, INC.
AND  BFBC, LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK GONZALEZ, FRANCISCO GONZALEZ RIOS, and PABLO GONZALEZ RIOS, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>BARNARD CONSTRUCTION COMPANY, INCORPORATED, a corporation; BFBC, LLC,  a Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>                              Defendants. | CASE NO.: 3:22-cv-00534-AJB-KSC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER REMANDING ACTION TO STATE COURT**<br><br>[*Filed Concurrently with Declarations of Ben Campbell and Alexander Marx]*<br><br>Date: June 22, 2022<br>Courtoom: 2B<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** |

Defendants BARNARD CONSTRUCTION COMPANY, INC. and BFBC, LLC "Defendants") hereby submit their Opposition to Plaintiffs Frank Gonzalez, Francisco Gonzalez Rios, and Pablo Gonzalez Rios' ("Plaintiffs") Motion to Remand this Action to State Court.

/ / /

/ / /

## **LOCAL RULE 7.1(f)(3)(b) STATEMENT**

Per Southern District Local Rule 7.1(f)(3)(b), Defendants oppose Plaintiffs' Motion to Remand the Action to State Court for the following reasons:

1. Removal of the case was timely because neither of the two 30-day time limits for removal under 28 U.S.C. § 1446(b)(1) or (b)(3) was ever triggered; therefore, removal "at any time" was proper;

2. Plaintiffs do not dispute that the Class Action Fairness Act ("CAFA") requirements for minimal diversity and numerosity are met here;

3. By the evidence and arguments submitted herewith, Defendants have established by a preponderance of the evidence that the parties have put more than $5 million in issue as required by CAFA; and

4. Based on the above, removal was procedurally proper and all requirements of federal jurisdiction are satisfied.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Gordon Rees Scully Mansukhani, LLP**
101 W. Broadway, Suite 2000
San Diego, CA 92101

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................ 3

III.  LEGAL STANDARD ........................................................................ 3

    A.    Timeliness Standard ................................................................ 4

    B.    Amount in Controversy Standard ........................................... 5

IV.  ARGUMENT ...................................................................................... 7

    A.    Defendant Timely Removed this Case. ................................... 7

    B.    Because Defendant's Evidence Shows that Plaintiff's Claim for Waiting Time Penalties <u>Alone</u> Satisfies the Amount in Controversy Requirement, Amount in Controversy Is Easily Met. ..................... 10

        1.    Plaintiff's Objections to Defendant's Removal Notice Are Irrelevant in Light of Defendant's Evidence. ......................... 10

        2.    The Evidence Submitted in the Declarations In Support of This Opposition Supports an Amount In Controversy for Waiting Time Penalties Alone of **$6,347,633.27**, Exceeding the Amount in Controversy Requirement................................ 12

        3.    The Assumption that Each Class Member Experienced at Least One Violation Giving Rise to Waiting Time Penalties Is Based on the FAC's Allegations and Is Reasonable. ............. 13

        4.    Amount in Controversy is Met and Federal Jurisdiction Is Proper............................................................................... 16

V.   CONCLUSION ................................................................................ 16

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arias v. Residence Inn by Marriott*,
936 F.3d 920 (9th Cir. 2019).................................................................. 6, 7

*Carranza v. Nordstrom, Inc.*,
2014 WL 10537816 (C.D. Cal. Dec. 12, 2014) ..................................... 9

*Carvalho v. Equifax Information Services, LLC*,
629 F.3d 876 (9th Cir. 2010)............................................................ 4, 8, 9

*Castro v. ABM Indus., Inc.*,
2017 WL 4682816 (N.D. Cal. Oct. 19, 2017) ....................................... 7

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014) ............................................................................ 2, 5, 6

*Dietrich v. Boeing Company*,
14 F.4th 1089 (9th Cir. 2021) ............................................................... 4

*Ford v. CEC Entm't Inc.*,
2014 WL 3377990 (N.D. Cal. July 10, 2014) ....................................... 15

*Garcia v. Wal-Mart Stores*,
207 F.Supp.3d 1114 (C.D. Cal. 2016) ............................................... 9, 10

*Harris v. Bankers Life and Cas. Co.*,
425 F.3d 689 (9th Cir. 2015)...................................................... 1, 2, 4, 7, 8, 9

*Ibarra v. Manheim Invs., Inc.*,
775 F.3d 1193 (9th Cir. 2015).......................................................... 7, 16

*In re: Incretin Memetics Products Liability Litigation*,
2015 WL 11658714 (S.D. Cal. Mar. 16, 2015) ................................... 5

*Korn v. Polo Ralph Lauren Corp.*,
536 F.Supp.2d 1199 (C.D. Cal. 2008) ................................................. 6

*Kuxhausen v. BMW Financial Services NA, LLC*,
707 F.3d 1136 (9th Cir. 2013)............................................................... 9

*Lewis v. Verizon Commc'ns, Inc.*,
627 F.3d 395 (9th Cir. 2010)................................................................. 6

*Lopez v. Adidas Am., Inc.*,
2021 WL 927625 (C.D. Cal. Mar. 11, 2021) ....................................... 14

*Lowdermilk v. U.S. Bank N.A.*,
479 F.3d 994 (9th Cir. 2007)................................................................. 5

*Naranjo v. Spectrum Security Services, Inc.*,
  2022 WL 1613499 (Cal. S. Ct. May 23, 2022) .................................................. 13

*Rodriguez v. AT&T Mobility Servs., Inc.*,
  728 F.3d 975 (9th Cir. 2013) ............................................................................. 6

*Roth v. CHA Hollywood Medical Center, L.P.*,
  720 F.d 1121 (9th Cir. 2013) .................................................................. 1, 4, 5, 7

*Trahan v. U.S. Bank Nat'l Ass'n*,
  2014 WL 116606 (N.D. Cal. Jan. 13, 2014) ..................................................... 9

*Vallejo v. Sterigenics US LLC*,
  2021 WL 2685348 (S.D. Cal. June 29, 2021) ...................................... 13, 14, 15

**Statutes**

28 United States Code
  Section 1332 ................................................................................................ 4, 7

28 United States Code
  Section 1441 .............................................................................................. 4, 10

28 United States Code
  Section 1446 ......................................................................................... 1, 2, 4, 8

California Business & Professions Code
  Section 17200 ................................................................................................. 3

California Labor Code
  Section 203 .................................................................................................... 12

**Gordon Rees Scully Mansukhani, LLP**
101 W. Broadway, Suite 2000
San Diego, CA  92101

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

<div style="text-align: left; writing-mode: vertical;">

**Gordon Rees Scully Mansukhani, LLP**
101 W. Broadway, Suite 2000
San Diego, CA 92101

</div>

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case should remain in federal court because removal was procedurally proper and the case meets the requirements for federal diversity jurisdiction under the Class Action Fairness Act ("CAFA"). Plaintiffs do not dispute that the parties are minimally diverse or that Plaintiffs' proposed class has at least one hundred (100) members. The only questions Plaintiffs' Motion raises are whether the case was timely removed and whether Plaintiffs' Complaint puts at least $5 million in issue, exclusive of interest and costs. The answers to those questions are 'yes, it was,' and 'yes, it does.' Removal was timely because Defendants never received a document in the State Court Action stating the jurisdictional facts supporting removal; therefore, neither of CAFA's 30-day limits on time for filing was ever triggered and Defendants could remove at any time. And, the potential value of Plaintiffs' claim in this case, as derived from Defendants' investigation of their records combined with reasonable assumptions based on Plaintiffs' allegations, far exceeds the $5 million jurisdictional threshold. In fact, the amount in controversy for Plaintiffs' claim for waiting time penalties, **standing alone**, more that satisfies the amount in controversy requirement.

The Ninth Circuit has held that a removing defendant may remove a case "at any time, provided that neither of the two thirty-day periods under §1446(b)(1) and (b)(3) have been triggered." *Roth v. CHA Hollywood Medical Center, L.P.,* 720 F.d 1121, 1126 (9th Cir. 2013). Removal is untimely under 28 U.S.C. § 1446 (b)(1) only where a defendant waits more than 30 days from the initial filing to remove **and** the "initial pleading is removable on its face," i.e., all elements of federal jurisdiction are pled. *Id.*; *see also Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2015). Plaintiff asserts that the first period under 28 U.S.C. §1446(b)(1) was triggered by Plaintiff filing his Complaint on October 27, 2021, making removal on April 18, 2022 untimely, but Plaintiff does not even attempt

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

to claim that his Complaint pled the elements of federal jurisdiction, because he cannot do so. Instead, Plaintiffs concede that their Complaint did not, on its face, provide information indicating federal jurisdiction was proper. Motion, at 7 ("Plaintiffs' average pay rates and the approximate class size for purposes of estimating the amount in controversy were data points that should have been accessible to Defendants"). Plaintiffs nevertheless invite this Court to hold removal untimely by assessing the "data points" Defendants relied upon in their Notice of Removal and whether or not the data points were "accessible to Defendants" at the time the case was filed. *Id.* Plaintiffs' argument ignores settled law that removability for the purpose of sections 1446(b)(1) and (b)(3) is determined by a court's examining "the face of the initial pleading and [] the documents exchanged in the case by the parties," not by going outside the pleadings and documents to investigate "who knew what and when." *Harris, supra*, 425 F.3d at 695 (citation omitted). In short, neither Plaintiff's Complaint nor his Amended Complaint, which were the only substantive documents filed in the State Court Action, state grounds for removal. Neither thirty-day period was triggered and removal was timely.

The Supreme Court has held that a removing defendant need only plausibly allege that the amount in controversy exceeds the jurisdictional minimum; only if the plaintiff challenges that assertion is evidence required. *Dart Cherokee Basin Operating Co., LLC v. Owens, 574* U.S. 81, 89 (2014) (addressing requirements for notices of removal under 28 U.S.C. § 1446). Because Plaintiff now appears to question whether his claim could be worth $5 million – without conceding he seeks less than that – Defendant here submits evidence based on Defendant's accounting data and Plaintiffs' allegations showing that Plaintiffs' claim for waiting time penalties, by itself, exceeds the jurisdictional minimum. If that claim alone is enough for federal jurisdiction, Plaintiffs' numerous causes of action – alleging broad misconduct based in policies that applied generally to all class members -

certainly exceed an amount in controversy of $5 million.

In summary, Defendants timely removed the case and have shown by a preponderance that the amount in controversy exceeds $5 million. This Court should deny Plaintiffs' motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On October 27, 2021, Plaintiffs filed their class action and PAGA Complaint against Defendants in the Superior Court of the State of California, San Diego County. On January 5, 2022, Plaintiff filed an Amended Complaint. Plaintiff's Amended Complaint alleged liability arising from nine causes of action: (1) Failure to pay minimum and straight time wages; (2) Failure to pay overtime wages; (3) Failure to provide meal periods; (4) Failure to provide rest periods; (5) Failure to timely pay wages at termination; (6) Failure to provide accurate itemized wage statements; (7) Failure to indemnify business expenses; (8) Unfair business practices in violation of Cal. Prof. Code §§ 17200 *et seq.*; and (9) Civil penalties under PAGA.   Dkt. 1, Exh. A, Amended Complaint (the "FAC") ¶¶ 35-105. Plaintiff seeks to certify a class of "All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent." FAC, ¶ 28.

On April 18, 2022, Defendants removed this case to this Court. Dkt 1. In their Notice of Removal, Defendants alleged that this Court has jurisdiction over Plaintiffs' claims pursuant to CAFA because (1) the purported class contains more than 100 members; (2) the parties are minimally diverse; and (3) Plaintiffs' claims place more than $5,000,000 in controversy. Plaintiffs now seek remand.

## III.   LEGAL STANDARD

The only questions for this Court are whether Defendant timely removed this case and whether Plaintiff's FAC puts at least $5 million at issue. If removal was timely and the potential value of Plaintiff's claims is more than $5 million,

then diversity jurisdiction under CAFA is proper and the Court should deny Plaintiff's motion to remand.

### A.   Timeliness Standard

While 28 U.S.C. § 1332(d) states the conditions for removal under CAFA, timing for CAFA removal is governed by 28 U.S.C. §§ 1441 and 1446. The baseline for removal is set by § 1441(a), which provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

While removal is generally authorized by 28 U.S.C. § 1441 without regard to time, 28 U.S.C. §§ 1446(b)(1) and (b)(3) provide two thirty-day limitation periods that are only triggered if a defendant is served with a document in the action stating a basis for removability. *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013). The first limit under §1446(b)(1) is only triggered if the case stated by the initial pleading is "removable on its face" (*Harris, supra*, 425 F.3d at 694), in which event a defendant has "thirty days after the defendant receives the initial pleading" to remove the case. 28 U.S.C. § 1446(b)(1); *Carvalho v. Equifax Info. Servs., LLC.*, 629 F.3d 876, 885 (9th Cir. 2010). If no basis for federal jurisdiction appears on the initial pleading then a second thirty-day period for removal under 28 U.S.C. § 1446(b)(3) may be "triggered if . . . the defendant receives a copy of an amended pleading, motion, order or other paper from which removability may first be ascertained." *Id*. Moreover, the Ninth Circuit has held that for the 30-day deadline to begin to run, the "pleading, motion, order or other paper" provided to defendant must state a basis for federal jurisdiction that is "unequivocally clear and certain." *Dietrich v. Boeing Company*, 14 F.4th 1089, 1091 (9th Cir. 2021).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**If neither of the above periods is triggered a defendant may remove a case under CAFA "at any time."** *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013). Moreover, a defendant has no "duty of inquiry if the initial pleading or other document is indeterminate with respect to removability." *Id.*, at 1125. A defendant, therefore, "does not lose the right to remove because it did not conduct . . . an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Id.* This Court summarized the relevant law in *In re: Incretin Memetics Products Liability Litigation,* 2015 WL 11658714, at *3 (S.D. Cal. Mar. 16, 2015) (Battaglia, J.) thusly:

> The law is well-established that receipt of an indeterminate document does not create a duty to investigate jurisdictional facts and does not trigger either thirty-day time period for removal. As long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the thirty-day time periods for removal never begin to run and the defendant may remove at any time[.][1]

In short, where neither the plaintiff's complaint nor a subsequent paper state a basis for removal, a defendant may remove a case under CAFA at any time.

**B.     Amount in Controversy Standard**

CAFA "gives federal courts jurisdiction over certain class actions . . . if the class has more than 100 members,  the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee,* 574 U.S. at 84-85. Previously, the Ninth Circuit applied an antiremoval presumption to CAFA cases and required removing defendants to prove jurisdictional requirements to a "legal certainty." *E.g., Lowdermilk v. U.S. Bank N.A.,* 479 F.3d 994, 999 (9th Cir. 2007), *overruled as recognized in Rodriguez v. AT&T Mobility Servs., Inc.,* 728 F.3d 975,

---

[1] The *Incretin* matter dealt with removal under traditional diversity but, as this Court explained, the rules discussed apply to CAFA removal. *Incretin, supra*, 2015 WL 11658714, at n. 4.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

981 (9th Cir. 2013). This changed starting in 2013, in light of the U.S. Supreme Court's guidance that "no antiremoval presumption attends cases involving CAFA." *Dart Cherokee,* 574 U.S. at 89. Recently, the Ninth Circuit "reaffirm[ed]" the principles laid out in *Dart Cherokee* because it perceived that "some remnants of [its] former antiremoval presumption seemed to persist" among lower courts despite its contrary guidance. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

As a threshold matter, when removing under CAFA, the notice need only contain "a plausible allegation" that the jurisdictional requirements are satisfied. *Dart Cherokee Basin Operating Co. v. Owens,* 574 U.S. 81, 89 (2014). Only if "the plaintiff contests, or the court questions, the defendant's allegation" does the defendant need to provide evidence. *Id.; see also Arias v. Residence Inn by Marriott,* 936 F.3d 920, 925 (9th Cir. 2019). If either the plaintiff or the court questions jurisdiction, the defendant need only establish jurisdiction by a preponderance of the evidence, not a "legal certainty." *Id.* at 924. As applied to the amount in controversy, this means demonstrating only "an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Id.* at 927 (*quoting Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010)). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias,* 936 F.3d at 927 (emphasis in original). Accordingly, "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be less than the requisite . . . amount." *Id.* (internal marks omitted). Defendant's burden is not "daunting" and thus, "[w]hen [the] calculations [are] relatively conservative, made in good faith, and based on evidence wherever possible," the court may find that the amount in controversy has been established by a preponderance of the evidence. *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204-1205 (C.D. Cal. 2008).

Defendants have several options to meet this burden. First, a defendant can show amount in controversy by pointing to the plaintiff's allegations. When calculating the amount in controversy, "a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Castro v. ABM Indus., Inc.,* 2017 WL 4682816 at 3 (N.D. Cal. Oct. 19, 2017). Second, a defendant may use "reasonable assumptions" to support its "theory of damages exposure." *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1198 (9th Cir. 2015). An assumption is "reasonable if it is founded on the allegations of the complaint." *Arias,* 936 F.3d at 925. Lastly, the defendant "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy." *Ibarra,* 775 F.3d at 1197.

## IV.   ARGUMENT

This case belongs before this Court because removal was timely and the parties have put more than $5 million in controversy. The Court should deny Plaintiff's motion to remand.

### A.   Defendant Timely Removed this Case.

As explained above, removal under CAFA is generally proper "at any time" after the initial pleading (*Roth, supra*, 720 F.3d at 1126), provided the defendant does not receive a paper in the stating, "within the four corners of the initial pleading or subsequent paper," the "jurisdictional facts" supporting removal. *Harris, supra*, 425 F.3d 689 at 695. Here, the "jurisdictional facts" supporting removal that would need to be stated to trigger a 30-day time limit are (1) minimal diversity, (2) at least 100 class members, and (3) more than $5 million in controversy. 28 U.S.C. § 1332(d). Although Plaintiffs' Motion says that removal was untimely because the initial Complaint provided grounds for removal and Defendants removed more than 30 days after it was filed (Motion, at 6), <u>Plaintiffs do not claim that the Complaint, or any other document filed in the case, pled the</u>

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

required jurisdiction facts. Rather, Plaintiffs' argue that filing of their initial complaint triggered the 30-day time limit for removal under 28 U.S.C. § 1446(b)(1), based on Defendants' alleged subjective knowledge of two pieces of information, **neither of which appears in the Complaint**: (1) Plaintiffs' average pay rates, which Defendants provided to Plaintiffs' counsel "before the case was filed," (Motion, at 7); and (2) the approximate number of putative class members, which "is information that Defendants should readily have available." Motion, at 7.

This argument fails because it relies on a subjective assessment of "who knew what and when" rather than objective examination of the operative documents. *Harris, supra*, 425 F.3d at 695. With respect to pay rates provided before the case was filed, "it is axiomatic that a case cannot be removed before its inception." *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 885 (9th Cir. 2010). Accordingly, an "other paper [under 28 U.S.C. §1446(b)(3)] does not include any documents received prior to receipt of the initial pleading." *Id.*, at 886. Moreover, the *Carvalho* court rejected the very argument Plaintiffs advance here -- that "a pre-complaint document containing a jurisdictional clue can operate in tandem with an indeterminate initial pleading to trigger some kind of hybrid of the first and second removal periods [under 28 U.S.C. §§ 1446(b)(1) and (b)(3)]." (Id.) As the *Carvalho* court explained:

> In *Harris*, we held that the first thirty-day removal period comes into play only if removability is ascertainable from examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry. We adopted this bright-line approach to avoid the spectre of inevitable collateral litigation over whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry. We would eviscerate our holding in *Harris* if we required defendants to rely on pre-complaint documents to ascertain whether a case stated by an indeterminate initial pleading is actually removable.

*Id*. Plaintiffs' pay records provided to Plaintiffs before the inception of this case are, therefore, irrelevant to whether the initial complaint was "removable on its face" under *Harris*. 425 F.3d at 694.

With respect to the approximate number of class members, Plaintiffs again make an argument the Ninth Circuit rejected in *Harris* and other cases. Essentially, Plaintiffs contend that Defendants "should have looked in [their] files within the first thirty days" to ascertain removability and failed to do so. *Harris, supra,* 425 F.3d at 696; see also Motion, at 7 ("the approximate number of putative class members is information that Defendants should readily have available"). Plaintiffs disregard Ninth Circuit authority holding that removability is ascertained from "examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Carvalho, supra*, 629 F.3d at 886; *see also Kuxhausen v. BMW Financial Services NA, LLC* 707 F.3d 1136, 1142 (9th Cir. 2013) ("Defendant was not obligated to supply information which plaintiff had omitted); *Trahan v. U.S. Bank Nat'l Ass'n*, 2014 WL 116606, at *4 (N.D. Cal. Jan. 13, 2014) ("[Defendant] was not required to engaged in the extrapolations that would have been required to determine whether the amount in controversy exceeded $5,000,000"). Plaintiffs' argument here is, precisely, that Defendants failed to "make further inquiry" in order to "supply information which plaintiff[s] had omitted." As the Ninth Circuit has repeatedly held, Defendants had no duty to do this.[2]

---

[2] None of the three cases plaintiffs cite for their claim that a defendant faced with an indeterminate pleading must review its records within the first thirty days to avoid untimely removal (Motion, at 7-8) stands for this. *Kuxhausen* holds the opposite, as noted above. *Carranza v. Nordstrom, Inc.*, 2014 WL 10537816 at * (C.D. Cal. Dec. 12, 2014) did not discuss timeliness at all; its reference to defendant having "control over . . . records" dealt with a defendant's burden to establish amount in controversy. And, *Garcia v. Wal-Mart Stores*, 207 F.Supp.3d 1114, 1126 (C.D. Cal. 2016) based remand on the defendant's failure to show by a preponderance that amount in controversy was met (*Id.*, at 1126); its discussion of timeliness was dicta. Moreover, the *Garcia* court's concern over the timing of

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

In short, Plaintiff's argument that removal was untimely because Defendants failed to exercise reasonable diligence in investigating the allegations in Plaintiffs' Complaint has no merit. The grounds for federal jurisdiction appeared on neither the Complaint nor the Amended Complaint, neither 30-day period under §§ 1441(b)(1) and (b)(3) was ever triggered, and removal was timely.

**B.    Because Defendant's Evidence Shows that Plaintiff's Claim for Waiting Time Penalties <u>Alone</u> Satisfies the Amount in Controversy Requirement, Amount in Controversy Is Easily Met.**

   1.    Plaintiff's Objections to Defendant's Removal Notice Are Irrelevant in Light of Defendant's Evidence.

Plaintiff advances two arguments that Defendant has not met its burden to show the amount in controversy is more than $5 million. Neither is persuasive.

First, Plaintiff attacks the evidence submitted in support of Defendant's removal notice as insufficient. Plaintiff faults the Declaration of Ben Campbell in support of Defendants' Notice of Removal (Campbell Removal Declaration) for including not including, *inter alia*, the "number of workweeks worked by class members, the average rate of pay for class members, [and] the number of former employees who experienced waiting time penalties." Motion, at 8-9. Plaintiff also attacks the Campbell Removal Declaration for not including sufficient foundation for the information provided, including "the type of records reviewed, who reviewed them, what data points were relied upon in the business records, and how the records were stored," as well as using Plaintiffs as stand-ins for typical class members. Motion, at 9-10. This argument is irrelevant in light of the evidence now submitted. The Declaration of Ben Campbell in support of this Opposition

---

removal arose from evidence of "gamesmanship" where the defendant waited to remove until the district court likely to be assigned the case denied class cert in a virtually identical matter. (*Id*., at 1131). There was no "gamesmanship" here, and the parties had not even propounded initial discovery when the case was removed. Marx Opp. Decl., ¶ 5.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

("Campbell Opp. Decl."), which is based his examination of Defendant's accounting database (Vista Viewpoint) records – provides the figures Plaintiffs' Motion points to, among others: A precise number of potential class members (**573** – Campbell Opp. Decl, ¶ 5), an average rate of pay for all class members ($**41.03** per hour for straight time worked – Campbell Opp. Decl., ¶ 8), a precise number workweeks at issue (**21,100** – Campbell Opp. Decl., ¶ 5), and a number of employees whose claims would potentially be subject to waiting time penalties (**511** – Campbell Opp. Decl., ¶ 11)[3]. Defendants use these figures and others as explained below and combined with allegations in the FAC, to arrive at a calculation for amount in controversy for Plaintiff's claim of waiting time penalties that exceeds the amount in controversy requirement by itself.

Second, Plaintiff takes issue with what he claims are unreasonable calculations regarding the value of Plaintiffs' claims, including the lack of a precise number of potential class members and other numbers or assumptions with which Defendants disagree. Motion, at 11-18. While Defendants maintain the reasonableness of the assumptions used in their removal notice, Plaintiffs' objections are irrelevant in the light of the precise figures that are the basis for the calculation here – which is only offered as to waiting time penalties, and sufficient to meet the jurisdictional threshold on that basis alone. Because a singular violation is enough to trigger a claim for waiting time penalties, the only assumption necessary is that each class member, on at least **one** occasion, experienced *any one of the multiple wage and hour violations* Plaintiff alleges and

---

[3] The Declaration of Ben Campbell submitted in support of Defendant Barnard Construction's Opposition to Remand in the case related to this one, *Ramirez Rojas v. Barnard Construction et al.*, 3:22-cv-00533-AJB-KSC, included a different number of employees with claims for waiting time penalties, 525, due to inadvertently including 14 employees whose claims should have been omitted as barred by the statute of limitations. The error resulted in a 2% overestimate of amount in controversy in that case which would not affect meeting the jurisdictional threshold.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

that this violation gave rise to waiting time penalties. This assumption is fully justified by the allegations in Plaintiffs' FAC, as detailed below.

In summary Defendants' calculations of amount in controversy herein do not rely on extrapolation or guesswork – they are based on hard data derived from Defendants' business records and reasonable assumptions, which Plaintiffs' allegations more than justify.

> 2.    The Evidence Submitted in the Declarations In Support of This Opposition Supports an Amount In Controversy for Waiting Time Penalties Alone of **$6,347,633.27**, Exceeding the Amount in Controversy Requirement.

Defendants provide compelling evidence to support the jurisdictional requirements. In particular, Defendant relies on employee data pulled from Defendant's accounting software database, Vista Viewpoint, and used in combination with Plaintiff's allegations to calculate waiting time penalties. Campbell Opp, Decl., ¶ 3; Declaration of Alexander Marx In Support of Opposition ("Marx Opp. Decl."), ¶ 2, 3.

As explained further in the declarations files herewith, Defendant calculated the estimated amount in controversy for waiting time penalties by first assuming at least one violation giving rise to waiting time penalties (Marx Opp. Decl., ¶ 3). Defendant then reviewed its accounting data and (1) ascertained the total number of employees falling within based on Plaintiff's proposed class definition (the "Class Members"), which was **573** (Campbell Opp. Decl., ¶5 ); (2) ascertained the total average daily wage for Class Members, based on the average straight time rate, overtime rate, and hours worked, which was **$414.07** (Campbell Opp. Decl., ¶¶ 5-9); (3) ascertained the number of Class Members who separated employment from three years prior to the Complaint being filed up to removal, which was **511** (Campbell Opp, Decl, ¶¶ 10, 11). Defendant then multiplied the last two figures by the thirty-day maximum for waiting time penalties to reach a total of **$6,347,633.27.** Marx Opp. Decl., at ¶ 4; *see also* Cal Lab. Code § 203(a).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

As the above show, the amount in controversy requirement for CAFA is met based on the waiting time claim <u>alone</u>. Of course, Plaintiff also asserts numerous other claims, which further reinforces that the amount in controversy is met here. And, applying the standard 25% benchmark to attorneys' fees would yield yet another $1,586,908.32 in controversy for a total of $7,934,541.59 in controversy – on waiting time penalties and attorneys' fees alone. On the other side, Plaintiffs have provided no evidence. Defendants' calculation stands unchallenged, is fully justified by Plaintiff's allegations, and more than supports jurisdiction. This Court should accept it.

3.  The Assumption that Each Class Member Experienced at Least One Violation Giving Rise to Waiting Time Penalties Is Based on the FAC's Allegations and Is Reasonable.

Waiting time penalties may be triggered by just **one** violation of **one** wage and hour provision during employment, including a claim for overtime, minimum wages, or meal or rest breaks. *See Naranjo v. Spectrum Security Services, Inc.*, 2022 WL 1613499 at *6 (Cal. S. Ct. May 23, 2022) (holding that claims for unpaid meal and rest breaks, like other claims for unpaid wages, give rise to liability for waiting time penalties). Accordingly, a complaint that alleges violations of **multiple** provisions resulting from policies Defendant intentionally adopted justifies an assumption of at least one violation per class member.[4] *See Vallejo v. Sterigenics US LLC*, 2021 WL 2685348, at *3 (S.D. Cal. June 29, 2021) (Battaglia, J.) ("the complaint's waiting time penalties piggyback onto the allegations of missed meal and rest break claims and others, each of which assert widespread violations"). Moreover, a complaint, that raises "allegations of [] willful failure to

[4] Defendants' Notice of Removal assumed waiting time violations as to 50% of potential class members. However, this was based on a conservative assumption that 50% of potential class members "are still employed by defendants" (Dkt. 1, Notice of Removal, at 13-14); i.e., Defendants' Notice of Removal assumed a 100% violation rate as to 50% of potential class members for waiting time penalties. As shown by the Campbell Oppo. Decl., the percentage of terminated employees was far higher than Defendants' initial conservative estimate.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA  92101

pay final wages [is] sufficient to support estimations of waiting time penalties at a 100% rate. *Vallejo, supra*, 2021 WL 2685348, at *5 (S.D. Cal. June 29, 2021); *see also Lopez*, 2021 WL 927265 at *2 ("the Complaint's broad allegations inferring that every non-exempt terminated employee could have suffered at least one violation, assuming the maximum violation rate is reasonable.").

Plaintiff's FAC raises precisely these types of allegations of widespread and willful violations based on policies commonly found to justify an assumption of at least one violation giving rise to waiting time penalties per Class Member:

- "Defendants maintained a systematic, company-wide policy and practice of: (a) Failing to pay employees for all hours worked, including all minimum, straight time, and overtime wages . . . ; (b) Failing to provide employees with timely and duty-free meal periods . . . ; (c) Failing to authorize and permit employees to take timely and duty-free rest periods . . . ; (d) Willfully failing to pay employees all minimum, straight time, overtime, meal period premium, and rest period premium wages due within the time period specified by California law when employment terminates[.]" FAC, ¶ 5.

- "Defendants . . . were on actual and constructive notice of the improprieties . . . and intentionally refused to rectify their unlawful policies." FAC, ¶ 6.

- "Throughout Plaintiffs' employment, Defendants have failed to pay for all hours worked (including minimum, straight time, and overtime wages), failed to provide Plaintiffs with legally complaint meal periods, failed to authorize and permit Plaintiffs to take rest periods, failed to timely pay all final wages to Plaintiffs when Defendants terminated their employment[.]" FAC, ¶ 17.

- "Defendants maintained a policy and practice of not paying the Class, and the Aggrieved Employees for all hours worked, including

-14-

minimum, straight time, and overtime wages." FAC, ¶ 18.

- "Defendants frequently paid Plaintiffs, the Class, and the Aggrieved Employees less than all their work time." FAC, ¶ 19.
- "Plaintiffs, the Class, and Aggrieved Employees routinely worked through meal periods "off-the-clock." FAC, ¶ 20.
- "Plaintiffs' final paychecks did not include payment for all expenditures, minimum wage, straight time, overtime, meal period premium, and rest period premium wages owed to them by Defendants at the conclusion of employment. . . . Defendants' failure to pay Plaintiffs' final wages when their employment terminated was . . . consistent with Defendants' policy and practice that applied to Plaintiffs, the Class, and the Aggrieved Employees. FAC, ¶ 22.
- Defendants failed, and continue to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code §§ 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ. FAC, ¶ 64.

Given the weight of the evidence and Plaintiff's allegations, if Plaintiffs wished now to contend that the amount in controversy is not met because a non-trivial number of Class Members either (A) experienced **no** violations, or (B) were paid **all** amounts due for any violations upon termination, **they must provide some evidence supporting a proposed alternative calculation**. Plaintiffs have not done so. **This omission is fatal to Plaintiffs' attempt to defeat jurisdiction**. *See Vallejo, supra*, 2021 WL 268534, at *5 (Battaglia, J.) ("Plaintiff has not rebutted Defendant's evidence nor has Plaintiff provided any evidence to suggest that the payments were ever provided. Thus, Defendant's estimate of . . . waiting time penalties is proper."); *Ford v. CEC Entm't Inc.*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("Because no averment in the complaint supports an

-15-

inference that these sums were ever paid, [plaintiff] cannot now claim class members may be awarded less than the statutory maximum."); *see also Ibarra, supra*, 775 F.3d at 1197 ("if defendant's asserted amount in controversy is challenged, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement as been satisfied"). With no showing from Plaintiffs, the reasonableness of Defendants' amount in controversy calculation is not subject to reasonable dispute. Amount in controversy is satisfied to a preponderance of the evidence based on Plaintiffs' claim for waiting time penalties alone.

        4.      Amount in Controversy is Met and Federal Jurisdiction Is Proper.

As shown, the amount in controversy far exceeds the minimum requirement of CAFA jurisdiction. While the Court is called upon to make a judgment based on a preponderance of the evidence, only Defendants have submitted evidence with calculations derived from Defendants' data and Plaintiffs' allegations. Plaintiffs have offered nothing. The amount in controversy has, therefore, been demonstrated to a preponderance. And, because removal was timely as shown above and neither minimal diversity nor numerosity under CAFA are in dispute, federal jurisdiction is proper.

## V.    CONCLUSION

    For the foregoing reasons, this Court should deny Plaintiff's Motion.

Dated:  June 8, 2022

GORDON & REES SCULLY MANSUKHANI, LLP

By:   /s/ Alexander T. Marx
      Brandon D. Saxon
      Alexander T. Marx
      Attorneys for Defendant
      BARNARD
      CONSTRUCTION
      COMPANY, INC AND
      BFBC, LLC

**Gordon Rees Scully Mansukhani, LLP**
101 W. Broadway, Suite 2000
San Diego, CA 92101

1255248/67767011v.2

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND