UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK GONZALEZ, FRANCISCO GONZALEZ RIOS, and PABLO GONZALEZ RIOS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BARNARD CONSTRUCTION COMPANY, INC., a corporation; BFBC, LLC, a Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 22-cv-00534-AJB-KSC<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND**<br><br>**(Doc. No. 11)** |

Before the Court is Frank Gonzalez, Francisco Gonzalez Rios, and Pablo Gonzalez Rios' ("Plaintiffs") motion to remand. (Doc. No. 11.) Barnard Construction Company, Inc. and BFBC ("Defendants") filed an opposition, to which Plaintiffs replied. (Doc. Nos. 14, 15.) Having considered the parties' moving papers and for the reasons set forth below, the Court **DENIES** the motion to remand.

1

## I. BACKGROUND

Plaintiffs were hourly-paid, non-exempt employees of Defendants, who separated from the company in January 2021. (Doc. No. 1-2 at 40.)[1] On October 27, 2021, Plaintiffs filed suit against Defendants in San Diego County Superior Court, asserting claims on behalf of themselves and putative class members of similarly situated employees employed by Defendant in California. (*Id.*, Compl. at 6.)

On January 5, 2022, Plaintiffs filed a First Amended Complaint ("FAC"). (*Id.*, FAC at 37.) The FAC contains nine causes of action under California law: (1) failure to pay minimum and straight time wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to pay all wages due upon termination; (6) failure to provide accurate wage statements; (7) failure to indemnify employees for expenditures; (8) unfair business practices; and (9) civil penalties under the Private Attorneys General Act for violations of the California Labor Code. (*Id.*)

Defendants filed an Answer to the FAC on February 18, 2022 and removed the action to federal court on April 18, 2022, asserting diversity jurisdiction over this case pursuant to the Class Action Fairness Act ("CAFA"). (Doc. Nos. 1, 2.) Plaintiffs thereafter filed the instant motion to remand, arguing that removal was untimely, and that Defendants failed to establish that the amount-in-controversy requirement under CAFA is met. (Doc. No. 11-1 at 2.) This Order follows.

## II. LEGAL STANDARD

CAFA gives federal courts jurisdiction over certain class actions if the class has (1) at least 100 members, (2) the parties are minimally diverse, and (3) the amount-in-controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2), (5)(B); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). An action that meets CAFA standards may be removed to federal court. *See* 28 U.S.C. § 1441(a). Unlike the general presumption against removal, "no antiremoval presumption attends cases invoking CAFA." *Dart*

---

[1] The pinpoint page citations refer to the ECF-generated page numbers at the top of each filing.

*Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Even in CAFA cases, however, the burden of establishing removal jurisdiction, remains on the defendant seeking removal. *See Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011).

If the defendant's notice of removal was untimely, a plaintiff may move to remand the case back to state court. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010). The timeliness of removal is governed by 28 U.S.C. Section 1446(b), which identifies two thirty-day periods for removing a case. *Id.* The first is triggered "if the case stated by the initial pleading is removable on its face." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). The second is triggered "if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order, or other paper' from which removability may first be ascertained." *Carvalho*, 629 F.3d at 885 (quoting 28 U.S.C. § 1446(b)(3)). "[D]efendants need not make extrapolations or engage in guesswork; yet the statute requires a defendant to apply a reasonable amount of intelligence in ascertaining removability." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (internal quotations omitted). A defendant may remove a case "outside the two thirty-day periods on the basis of [defendant's] own information, provided that it has not run afoul of either of the thirty-day deadlines." *Roth v. CHA Hollywood Med. Ctr, L.P.*, 720 F.3d 1121, 1124–25 (9th Cir. 2013).

## III. DISCUSSION

As previously noted, Plaintiffs seek remand of their case to state court, arguing that removal was untimely and that Defendants have not shown that CAFA's amount-in-controversy requirement is met. Defendants maintain that removal was timely, and that Plaintiffs' claim for waiting time penalties alone satisfies CAFA's monetary threshold. The Court discusses the parties' arguments in turn.[2]

---

[2] Plaintiffs do not dispute Defendants' showing of CAFA's other requirements (minimum diversity and numerosity).

**A.     Timeliness**

First, the Court considers whether Defendants' removal was timely. Plaintiffs contend that removal was untimely because both thirty-day periods for removal had passed by the time Defendants filed their Notice of Removal on April 18, 2022. Defendants argue that removal was timely because neither removal period was ever triggered.

As earlier mentioned, the first thirty-day period for removal is triggered "if the case stated by the initial pleading is removable on its face." *Harris*, 425 F.3d at 694. The second thirty-day period for removal is triggered when the defendant receives "a copy of an amended pleading, motion, order, or other paper' from which removability may first be ascertained." *Carvalho*, 629 F.3d at 885 (quoting 28 U.S.C. § 1446(b)(3)).

The Court agrees with Defendants that neither removal period was triggered in this case. Neither the Complaint nor the FAC allege Plaintiffs' states of citizenship or specify an amount in controversy. Because the pleadings did not affirmatively reveal information that would allow Defendants to ascertain that the parties were minimally diverse and that the amount in controversy exceeds $5 million, the Court does not find the Complaint or FAC removable on its face. Accordingly, Plaintiffs' pleadings did not trigger the thirty-day removal periods. *See Harris*, 425 F.3d at 695. ("The face of Harris's initial pleading did not affirmatively reveal information to trigger removal based on diversity jurisdiction because the initial pleading only stated Brown's 1972 residency, not his citizenship, and certainly not his citizenship as of the filing of the complaint."); *Roth*, 720 F.3d at 1125 ("The FAC in this case was at best indeterminate. It did not reveal on its face that there was diversity of citizenship or that there was sufficient amount in controversy to support jurisdiction under CAFA.") (internal quotations and citation omitted).

Where, as here, neither of the thirty-day removal deadlines has been triggered, a defendant may remove a case "outside the two thirty-day periods on the basis of its own information." *Roth*, 720 F.3d at 1124–25. Defendants did just that. They consulted their employment files and determined that there are approximately 500 individuals who meet Plaintiffs' proposed class definition, that Plaintiffs were citizens of Arizona, and that

Plaintiffs' claims amount to more than $5 million. (Doc. No. 1 at 8–11.) As neither thirty-day removal period was triggered, Defendants were permitted to remove this case "at any time." *Roth*, 720 F.3d at 1126. Consequently, the Court does not find Defendants' removal untimely.[3]

## B.  Amount in Controversy

Second, the parties dispute whether CAFA's amount-in-controversy requirement is met. The Court thus considers whether Defendants have demonstrated, by a preponderance of evidence, that the amount in controversy exceeds $5 million.

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. "[T]he amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 87. If, however, the plaintiff challenges the defendant's allegations, "both sides submit proof and the court decides, by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. A removing defendant cannot satisfy its burden "by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "The parties may submit evidence outside the complaint, including affidavits

---

[3] Plaintiffs' brief raises objections similar to those previously considered and rejected by the Ninth Circuit as set forth below. The Court rejects them here for the same reasons.

> It may be that in some diversity cases, defendants will be able to take advantage of the fact that neither the "initial pleading" nor any later document received from plaintiff triggers one of the two thirty-day periods. In such cases, defendants may sometimes be able to delay filing a notice of removal until it is strategically advantageous to do so.
> . . .
> Our best answer—and a likely sufficient answer—is that plaintiffs are in a position to protect themselves. If plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained.

*Roth*, 720 F.3d at 1126.

or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (internal quotations and citation omitted).

As earlier mentioned, Defendants argue that the amount in controversy exceeds $5 million based on Plaintiffs' claim for waiting time penalties alone. With respect to these claims, Plaintiffs allege that Defendants violated California Labor Code §§ 201 and 202 by failing to pay Plaintiffs and "many other members of the Class. . . their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ[.]" (Doc. No. 1-2 at 54.) An employer's failure to timely pay wages owed pursuant to California Labor Code §§ 201 or 202 results in a penalty of the employee's wages for every day it is late, up to a maximum of thirty days' wages. *See* Cal. Labor Code § 203.

Defendants approximate that Plaintiffs' claim for waiting time penalties amount to over $6 million and submitted declarations from their counsel and Vice President ("VP") of Finance in support of their calculation. (Doc. Nos. 14-1, 14-2.) Defendants arrived at their estimate by assuming at least one wage and hour violation giving rise to waiting time penalties. (Doc. No. 14-1 at 2.) The VP of Finance analyzed the company's business records, and based thereon, estimated the number of class members who separated from employment during the limitations period for waiting time penalties (511) and the average daily wage for class members ($414.07). (Doc. No. 14-2 at 3–4.) Defendants multiplied those figures by the thirty-day maximum for waiting time penalties for a total of $6,347,693.10 (511 class members x $414.07 average daily wage x 30 maximum days).

Plaintiffs assert three problems with Defendants' calculations: (1) Defendants impermissibly assume a 100% violation rate; (2) Defendants' identification of the number of separated employees is mere speculation; and (3) Defendants improperly push onto Plaintiffs their burden to prove the amount in controversy. (Doc. No. 11 at 6, 8–10.) The Court disagrees.

First, Defendants did not assume a 100% violation in calculating the waiting time penalties above. The VP of Finance identified the full class size to be 573 employees. (Doc.

14-2 at 3.) Defendants calculated the waiting time penalties using only the number of class members the VP of Finance determined to have been separated from employment, which was 525 employees. (*Id.* at 3–4.) This is not the full class size, and thus, not a 100% violation rate. Even if Defendants did use a 100% violation rate, other district courts have concluded that allegations of the willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations) were sufficient to support estimations of waiting time penalties at a 100% rate. *See, e.g.*, *Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990 (N.D. Cal. July 10, 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . Because no averment in the complaint supports an inference that these sums were ever paid, Ford cannot now claim class members may be awarded less than the statutory maximum.").

Second, with respect to Plaintiffs' challenge to Defendants' method of identifying the number of terminated employees, the Court notes that a defendant may make assumptions in its calculations so long as they are reasonably grounded. *Ibarra*, 775 F.3d at 1197. Here, the VP of Finance detailed in his declaration the basis for his calculation. (Doc. No. 14-2 at 3–4.) He explained that because the employee data he reviewed did not include termination dates for the class members, he set a 42-day threshold to determine the number of terminated employees. (*Id.* at 4.) In other words, he assumed that "[a]ny employee who did not receive a paycheck in the last 42 days of data (March 7, 2022 – April 18, 2022)" was terminated. (*Id.* at 4.) To account for his use of a 42-day threshold, the VP of Finance explained that based on his experience, "it is extremely likely (~95% or more) that an employee who does not receive a paycheck for a six-week period has separated employment." (*Id.*) As Defendants' calculations are based on its VP of Finance's experience with and analysis of employee records, the Court finds them reasonably grounded. *See Ibarra*, 775 F.3d at 1199 ("A damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air, but need some reasonable ground underlying them.").

Finally, Plaintiffs do not offer any alternative calculation for waiting time penalties. While the burden of proof rests with Defendants, "if [the] defendant's asserted amount in controversy is challenged, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Ibarra*, 775 F.3d at 1197. Plaintiffs' attempt to discount the VP of Finance's declaration with mere argument is not enough. Counsel's argument is not evidence. Plaintiffs have not rebutted Defendants' evidence nor have Plaintiffs provided any evidence to suggest that payments were provided. Thus, the Court finds Defendants' asserted amount in controversy of $6,347,693.10 for waiting time penalties proper here.

## IV.   CONCLUSION

Based on the foregoing, the Court finds that removal was timely, and Defendants have satisfied their burden to demonstrate the amount-in-controversy requirement under CAFA is met. Accordingly, the Court **DENIES** Plaintiffs' motion to remand. (Doc. No. 11.)

**IT IS SO ORDERED**.

Dated: November 17, 2022

Hon. Anthony J. Battaglia
United States District Judge